In re INLAND DREDGING CORPORATION.

Ex parte GLOBE INDEMNITY CO.

No. 58.

Circuit Court of Appeals, Second Circuit.

Nov. 7, 1932.

F. A. W. Ireland and Ireland, Caverly & Hendrickson, all of New York City (Alexander Gangel, of New York City, of counsel), for appellant.

Harry H. Schutte, of Brooklyn, N. Y., for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The creditor was an insurer of the bankrupt under the Workmen's Compensation Act of New York (Consol. Laws, c. 67), and on December 2, 1930, got judgment against it for unpaid premiums. On April 20, 1931, section 130 of that act was added (Laws 1931, c. 508) to give priority to debts for

premiums, whether simple or judgment, "in all insolvency or bankruptcy proceedings," subject only to claims for wages. A petition in bankruptcy was filed against the bankrupt on May 4, 1931, and it was adjudicated on May twenty-first. The question is whether the claim has priority under section 64b (7) of the Bankruptcy Act, 11 USCA § 104 (b) (7). The judge thought that to allow it was to give a retroactive effect to the amendment, which should not be assumed to have been its intent.

At bottom the same reasons which lead courts to construe a statute prospectively, compel them in extreme instances to declare it unconstitutional. The disappointment of reasonable expectations, and the resulting inability to count upon the future, shock accepted notions of what is just. Concretely, the question at bar is whether we should say that the amendment of section 130 would defeat assurances, in reliance upon which creditors had contracted. It is clear that the impairment clause (article 1, § 10, Const. U. S.), does not control, though that too was dictated by the same underlying motive. The contracts between the bankrupt and its creditors were not disturbed; their sanctions remained what they were before. Therefore, those decisions which forbid an increase of the debtor's exemptions are not apt. Edwards v. Kearzey, 96 U. S. 595, 24 L. Ed. 793; Bank of Minden v. Clement, 256 U. S. 126, 41 S. Ct. 408, 65 L. Ed. 857; In re Messinger, 29 F.(2d) 158, 68 A. L. R. 1205 (C. C. A. 2). All that was done was to provide for a new division of any pot, which should in the future arise through the sequestration of the debtor's assets in bankruptcy, or any other insolvency proceedings. It is true that when a fund has been established ab initio for the benefit of a class of creditors, changes in its allocation will be taken as prospective only. United States F. & G. Co. v. Struthers Wells Co., 209 U. S. 306, 28 S. Ct. 537, 52 L. Ed. 804. That was the case of a surety bond, posted for all creditors of a contractor upon a public job. Although the point at issue was only procedural, and the statute, had this been the only change, might have been read retroactively, it also changed priorities among the creditors, and this was a substantial grievance. The whole statute had to be construed as prospective, since a single intent pervaded it. But such a bond is a security for all who contract with the contractor, as much as the mortgage in Holt v. Henley, 232 U. S. 637, 34 S. Ct. 459, 58 L. Ed. 767, and changes in the distribution of its proceeds are changes in rights on which creditors may properly be supposed to have relied.

It is of course possible to imagine that, when a man deals with another on credit, he too relies upon an equal division of whatever may be left of his debtor's assets, if sequestered. But that is a somewhat extravagant hypothesis; men who do not get security in advance, for that very reason may ordinarily be taken to assume that the debtor will pay; they do not count upon his failure; or if they do, do not seriously depend upon the share they may get of the rump. Thus in Pennsylvania an amendment of the priorities against insolvent decedents' estates, if passed before the testator's death, affects existing debts. Ilgenfritz v. Ilgenfritz, 5 Watts (Pa.) 158; Deichman's Appeal, 2 Whart. (Pa.) 395, 30 Am. Dec. 271. Even the impairment clause permits minor changes, which, though they may somewhat prejudice the creditor's recourse against his debtor, leave him with substantial sanctions. This doctrine beginning with Bronson v. Kinzie, 1 How. 311, 11 L. Ed. 143, has been established in many decisions; e. g., Oshkosh Water Works Co. v. Oshkosh, 187 U. S. 437, 23 S. Ct. 234, 47 L. Ed. 249; Conley v. Barton, 260 U. S. 677, 681, 43 S. Ct. 238, 67 L. Ed. 456. It has crystallized in the theorem that changes may be made in the remedy, so long as they do not affect the right. It is a general canon of statutory interpretation, though in the end a matter of degree, as to which there can be no rules. The case at bar falls in our opinion upon the side of remedy; by which we mean no more than that the interests affected are too contingent, too remote and too insubstantial to demand protection.

The result might be otherwise if the bankruptcy had preceded the amendment. In re Prudential Trust Company's Assignment, 223 Pa. 409, 72 A. 798. The sequestration of assets by a court creates a fund to be divided under the law as it then is; the rights have become "vested." Creditors though they have learned that they will not be paid in full, may well have relied upon the share which they will get as things are. We discussed that situation in Re Gasteiger (C. C. A.) 25 F.(2d) 642. Even then it does not follow that if the statute is plainly retroactive, it must be invalid. Under the amendments to the Bankruptcy Act of 1926, the court is given power in appropriate cases to apply the amendments to pending proceedings (section 18, 44 St. at L. 667, 668 [11 USCA § 1 note]); by virtue of which the

First Circuit in City of Chelsea v. Dolan, 24 F.(2d) 522, gave effect to priorities established after petition filed. We need not go so far here; indeed the statute suggests nothing of the kind. But, so far as we know —except for some decisions in the District Courts—it has never been thought that such statutes should not be construed to cover all future insolvencies, or that they are invalid if they do.

We do not of course mean that a state statute may control the distribution of bankrupt estates. The priority arises under section 64b (7), which incorporates the state law pro tanto; and the hierarchy of claims— the order of their priority—is fixed by that section. Hence we ignore the provision of section 130 that premiums shall be paid immediately after claims for wages. They take their place in the order prescribed by section 64b (7), regardless of where section 130 puts them.

Order reversed; priority allowed.