**WAGNER v. McDONALD, Federal Housing Administrator.**

**No. 11054.**

Circuit Court of Appeals, Eighth Circuit.

April 27, 1938.

274

Clyde W. Wagner, of St. Louis, Mo., for appellant.

Marshall Craig, Asst. U. S. Atty., of Charleston, Mo. (Harry C. Blanton, U. S. Atty., of Sikeston, Mo., on the brief), for appellee.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The single question presented on this appeal is whether a claim filed by the Federal Housing Administrator on behalf of the United States against a bankrupt estate is entitled to the priority accorded to debts due the government under section 3466, Revised Statutes, 31 U.S.C.A. § 191.

On June 17, 1935, Frank Weiss borrowed $2,493.93 from the Industrial Bank & Trust Company under the terms of the National Housing Act, as amended, 12 U.S.C.A. §§ 1701–1732, and executed two notes in favor of the bank for the aggregate amount. Subsequently, but prior to bankruptcy of the maker of the notes, the bank assigned them by an indorsement on the back "to the Federal Housing Administrator acting on behalf of the United States of America". On January 24, 1937, Weiss was adjudicated a bankrupt. In his schedule in bankruptcy the loan was listed as one entitled to priority of payment on the ground that it was a debt "due and owing to the United States." The Administrator then filed a claim "acting on behalf of the United States of America" for the unpaid balance on the notes of $2,067.77, including interest, and alleged that the claim was entitled to priority under section 64b(7) of the Bankruptcy Act, as amended, 11 U.S.C.A. § 104(b) (7), because it was submitted by a duly authorized agency of the United States. The referee held that the debt was not entitled to a preference, and entered an order allowing it as a general claim only, on the ground that the original debt "would not have been preferred in the hands of the Bank and the Bank by its assignment could assign only the rights that it had in the contract. * * *" On petition for review the District Court reversed the referee and ordered the claim to be allowed as preferred. The trustee of the bankrupt estate then brought this appeal, assigning the order of the District Court as error. Neither the amount of the claim nor the insolvency of the debtor are in dispute.

Section 64b(7) of the Bankruptcy Act, as amended, 11 U.S.C.A. § 104(b) (7), provides:

"The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment shall be * * *

"(7) Debts owing to any person who by the laws of the States or the United States is entitled to priority: provided, that the term 'person' as used in this section shall include corporations, the United States and the several States and Territories of the United States."

Section 3466, Revised Statutes, 31 U.S.C.A. § 191, provides: "Whenever any person indebted to the United States is insolvent, * * * the debts due to the United States shall be first satisfied; and the priority established shall extend * * to cases in which an act of bankruptcy is committed."

■ The language of the statute is unambiguous, and under the repeated decisions of the courts must be liberally construed. Beaston v. Farmers' Bank, 12 Pet. 102, 134, 37 U.S. 102, 134, 9 L.Ed. 1017; Lewis v. United States, 92 U.S. 618, 621, 23 L.Ed. 513; Bramwell v. United States F. & G. Co., 269 U.S. 483, 487, 46 S.Ct. 176, 177, 70 L.Ed. 368; Price v. United States, 269 U.S. 492, 500, 46 S.Ct. 180, 181, 70 L.Ed. 373; United States v. Guaranty Trust Co., 8 Cir., 33 F.2d 533, 537; Bliss v. United States, 8 Cir., 44 F.2d 909, 911.

The appellant seeks reversal of the order allowing priority on two grounds, which he states as follows:

(1) The United States is not a creditor of the bankrupt estate, and the Administrator, as such, is not entitled to priority of payment of his claim.

(2) Even should the claim be a debt due the United States, it is not entitled to priority of payment.

First. The appellant contends that the United States is not a creditor of the bankrupt estate for two reasons: (1) Because the "notes did not have any right of priority at the time of their execution * * * nor did the assignment create a debt due to the United States"; and (2) because the National Housing Act does not give a right of priority.

The second reason assigned requires no consideration. The right of priority, if it exists, arises under section 3466, and not by reason of any specific provision of the National Housing Act.

■ Neither is there merit in the first contention; that, because the right of priority did not attach to the notes in the hands of the bank when they were executed, the attribute of priority was not created when they became the property of the United States. Under section 3466, priority of payment does not depend upon how the United States acquired title to the notes, nor upon their status prior to their transfer. Priority is the result of insolvency of the debtor and ownership of the claim by the United States. In Howe v. Sheppard, 12 Fed.Cas. pp. 672, 675, No. 6,772, 2 Sumn. 133, Mr. Justice Story, as Circuit Justice for the District of Maine, held that a private judgment assigned to the United States prior to the death of the insolvent judgment debtor was entitled to priority over debts of the estate due private creditors under the statute. He said: "And, if [the estate be] insolvent, are not the United States necessarily entitled to a priority as to all their debts by the very terms of the statute?" He answered: "That the priority of the United States attaches to all debts, equitable, as well as legal."

In United States v. Fisher, 6 U.S. 358, 2 Cranch 358, 2 L.Ed. 304, the question was "Whether," under the statute, "the United States are entitled to be first paid and satisfied, in preference to the private creditors, a debt due to the United States by Peter Blight, as indorsor of a foreign bill of exchange, out of the estate of the bankrupt in the hands of assignees?" The bill had been purchased by an agent of the United States, but who did not declare himself to be such. In an opinion by Chief Justice Marshall the court held that the government was given priority by the statute.

In Lewis v. United States, 92 U.S. 618, 621, 23 L.Ed. 513, in considering the priority in bankruptcy of a debt due the Navy Department, the court said:

"This language is general, and it is without qualification.

"The form of the indebtedness is immaterial.

"It may be by simple contract, specialty, judgment, decree, or otherwise by record. The debt may be legal or equitable, and have been incurred in this country or abroad. A valid indebtedness is as effectual in one form as another. No discrimination is made by the statute.

"The debtors may be joint or several, and principals or sureties.

"Here, again, no distinction is made by the statute. All are included. * * *

"Where the language of a statute is transparent, and its meaning clear, there is no room for the office of construction. There should be no construction where there is nothing to construe."

■ In view of these well-settled principles, the fact that the debt assigned to the United States was originally a private debt is immaterial under the statute. But under this branch of his argument appellant contends that the government is not a creditor because, he says, the funds with which the Administrator purchased the notes from the bank were furnished by the Reconstruction Finance Corporation, a distinct corporate entity whose claims are not accorded priority in bankruptcy. This argument is based upon an erroneous interpretation of the National Housing Act. The two promissory notes evidencing the debt were made upon forms provided by the Federal Housing Administration, and were given to the Industrial Bank & Trust Company, which was insured under the provisions of the National Housing Act of June 27, 1934, c. 847, 48 Stat. 1246, as amended, 12 U.S.C.A. §§ 1701–1732. Section 1705 of title 12 U.S.C.A., requires the Reconstruction Finance Corporation to make available to the Administrator such funds as he may deem necessary, and, in addition, provides: "That the President, in his discretion, is authorized to provide such funds or any portion thereof by allotment to the Administrator from any funds that are avail-

able, or may hereafter be made available, to the President for emergency purposes." There is no proof that the particular funds used in this case were furnished by the RFC, and in view of the provisions of the act they may have been furnished through some other appropriation of Congress. The RFC is not claiming any interest in the debt.

■ It is argued further that the Administrator, as such, is not a creditor of the bankrupt estate, and cannot claim priority. The answer to this is that the Administrator makes no claim to ownership of the debt in his own right. He does not purport to act for himself, but expressly holds himself out and acts as the agent of the United States. The assignment from the bank ran to him as "Federal Housing Administrator acting on behalf of the United States of America." The claim filed in the bankrupt court alleged that the notes had been "duly assigned to Stewart McDonald as Federal Housing Administrator, acting on behalf of the United States of America"; and the claim was filed by the Administrator, "acting on behalf of the United States of America." Further, the Administrator, appointed by the President and confirmed by the Senate, is an officer of the United States with no authority under the law to act for himself. Under section 1703 (c) of title 12 U.S.C.A. he is authorized to collect all obligations "assigned to or held by him * * * until such time as such obligations may be referred to the Attorney General for suit or collection." In filing the claim here in controversy on behalf of the United States he was, therefore, acting under the direct mandate of Congress.

■ We find support for the views herein expressed in the many cases holding various acts of the agents and instrumentalities of the federal government to be in legal effect the acts of the United States. E. I. Du Pont De Nemours & Co. v. Davis, 264 U.S. 456, 44 S.Ct. 364, 68 L.Ed. 788; Clallam County v. United States, 263 U.S. 341, 44 S.Ct. 121, 68 L.Ed. 328; United States Grain Corp. v. Phillips, 261 U.S. 106, 43 S.Ct. 283, 67 L.Ed. 552; The Western Maid, 257 U.S. 419, 42 S.Ct. 159, 66 L.Ed. 299; Stanley v. Schwalby, 147 U.S. 508, 13 S.Ct. 418, 37 L.Ed. 259; Langer v. United States, 8 Cir., 76 F.2d 817; North Dakota-Montana Wheat Growers' Ass'n v. United States, 8 Cir., 66

F.2d 573, 92 A.L.R. 1484; Schroeder v. Davis, 8 Cir., 32 F.2d 454; Posey v. Tennessee Valley Authority, 5 Cir., 93 F.2d 726; Cohn v. United States Shipping Board, 6 Cir., 20 F.2d 56.

The appellant relies chiefly, as did the referee, upon Federal Housing Administrator v. Moore, 9 Cir., 90 F.2d 32. We do not regard that decision as controlling. While in that case priority in bankruptcy was denied a claim of the Federal Housing Administrator it does not appear that the claim was filed on behalf of the United States nor that the debt upon which the claim was based was acquired by the Administrator acting for the United States. The court in the Moore Case emphasized the fact that the debt was assigned to the Administrator after the date of adjudication. The fact situation is different here.

We are of opinion that under the facts of this case the United States is a creditor of the bankrupt estate.

■ Second. Appellant, in the second place, contends that the debt in this instance arose out of an ordinary insurance transaction, similar to the business ordinarily conducted by private persons, and that it should be governed by the same rules that apply to debts due to private persons. The same argument was made with great ability in the Fisher Case, supra, and the Supreme Court held it to be irrelevant to the construction of the statute and observed that priority is an ordinary regulation. In support of the proposition appellant cites the language of Judge Kenyon in United States v. Miller, 8 Cir., 28 F.2d 846, 850, 61 A. L.R. 405: "When the United States steps down from its plane of sovereignty and enters the domain of business and commerce, such as operating merchant vessels by a Shipping Board, or running railroads, or going into the insurance business, * * * it may well be claimed that it has abandoned its sovereignty and submitted itself to the same laws that govern individuals engaged in that business."

In the Miller Case the action was brought by the United States to recover the value of timber taken unlawfully from public land. The defense was a state statute of limitations. After pointing out that the United States is not subject to a state statute of limitations when suing to protect the public domain, the court held that the government was acting in

its sovereign capacity to enforce a public right and was therefore not barred, citing Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889. In the cited case the United States was suing to collect dividends upon the stock which it owned in the Canal Company, and the Supreme Court declared that in collecting public money the government was acting in its governmental capacity as much as if it were collecting taxes. In view of these decisions it is clear that the principle of law referred to, but not applied in the Miller Case, and now invoked by appellant, is not applicable here to limit the category of debts affected by section 3466.

As pointed out by the Supreme Court in United States v. State Bank of North Carolina, 31 U.S. 29, 35, 6 Pet. 29, 8 L. Ed. 308, a claim of the United States for priority of payment "does not stand upon any sovereign prerogative, but is exclusively founded upon the actual provisions of their own statutes."

Section 3466, R.S., 31 U.S.C.A. § 191, confers the right of priority.

We conclude that the claim in this case was for a debt due the United States within the meaning of the statute, and was properly allowed by the court as a preferred claim. The order appealed from is affirmed.